SO ORDERED.

SIGNED this 04 day of April, 2013.

_J. Rich Leonard_
**J. Rich Leonard**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

IN RE:

TANGLEWOOD FARMS, INC. OF
ELIZABETH CITY,

     DEBTOR.

CASE NO. 10–06719–8–JRL

CHAPTER 7

JAMES B. ANGELL, CHAPTER 7
TRUSTEE,

     PLAINTIFF,

     v.

C.A. PERRY & SON, INC.,

     DEFENDANT.

ADVERSARY PROCEEDING
NO.  12–00189–8–JRL

## ORDER

This matter came before the court on C.A. Perry & Son, Inc.'s ("defendant") motion to dismiss this adversary proceeding for failure to state a claim upon which relief can be granted, to which James B. Angell ("trustee") has responded in opposition.  A hearing on the matter was held on March 1, 2013 in Raleigh, North Carolina.   At the conclusion of the hearing, the court took the

1

matter under advisement.

## BACKGROUND[1]

On August 20, 2010, Tanglewood Farms, Inc. of Elizabeth City ("debtor") filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code.  The case was, however, subsequently converted to chapter 7 on July 12, 2011.  Approximately three days after the debtor filed its petition, James H. Winslow ("Mr. Winslow") and his wife, Billie Winslow ("Mrs. Winslow") (collectively "Winslows") filed a joint voluntary petition under chapter 11 of the Bankruptcy Code.[2]

Mr. Winslow was the president and 100% shareholder of the debtor.  As president of the debtor, Mr. Winslow conducted the debtor's granary operations in Pasquotank County, North Carolina, making decisions regarding the debtor's affairs and facilitating the exchange of corn, wheat, and soybeans between the debtor, his personal farming operation, Winslow Farms, and other local farmers.

The defendant, a North Carolina corporation, is a grain dealer and sells fertilizer.  For years, it conducted substantial business with the debtor and Mr. Winslow, selling them fertilizer, lime, and

---

[1]These facts are a fair recitation of the complaint, which is viewed in a light most favorable to the non–moving party, the trustee.  GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)).

[2]On November 8, 2010, the defendant filed a proof of claim (Claim No. 35) in the Winslows' individual case in the amount of $8,620,435.77, $7,755,847.52 of which represented the value of the grain stored with the debtor. The defendant also initiated an adversary proceeding in the Winslows' individual bankruptcy case objecting to the dischargeability of the obligations incurred as a result of the unauthorized conversion of the defendant's grain pursuant to § 523 of the Bankruptcy Code, AP No. 11–00104–8–JRL.

rock. The debtor regularly sold grain to, and stored grain for, the defendant.  In addition to their business relationship, Mr. Winslow and Bud Perry ("Mr. Perry"), the owner and president of the defendant, were close friends that typically greeted one another with a handshake and a hug.  Mr. Perry was the only person who regularly stored grain for subsequent pick up because, according to Mr. Winslow, of their close relationship.

The debtor, under the direction of Mr. Winslow, stored approximately two million bushels of grain belonging to the defendant in its granary facility between 2009 through 2010.[3]  In addition to the defendant's two million bushels, the debtor's granary facility also stored grain that the debtor purchased from other farmers.  This, according to the trustee's complaint, resulted in the commingling of the defendant's grain with grain belonging to the debtor.  Prior to the petition date and unbeknownst to the defendant, a substantial portion of the grain it stored with the debtor was sold to various third parties,[4] without the defendant's knowledge or consent.  The proceeds of these unauthorized sales, however, were not paid to the defendant.

While visiting the debtor's granary facility in February 2010, Mr. Perry observed the grain elevator loading several trucks with grain.  Further inquiry by Mr. Perry, following this observation, revealed that the debtor had been selling the defendant's grain, without its knowledge or consent, for some time.  After this discovery, the defendant commenced removing its grain from the silos at the debtor's facility.  The defendant removed over one million bushels of grain from the debtor's

---

[3]The storage agreement between the debtor and defendant is memorialized in a contract dated February 24, 2010.

[4]According to the trustee's complaint, the entities purchasing grain from the debtor during this period included Salmons, Inc., Cargill Incorporated, Perdue, and Belvidere Farmers Exchange.

grain elevators and silos.

After the defendant discovered the theft of its grain and removed the grain remaining at the debtor's facilities, Mr. Winslow visited Mr. Perry because he felt remorse over the unauthorized sales. During his visits, he told Mr. Perry that he would have to file for bankruptcy. Mr. Perry told Mr. Winslow to wait ninety days before filing bankruptcy.

The trustee filed a complaint initiating this adversary proceeding on August 19, 2012, asserting four separate causes of action seeking turnover of property of the estate under § 542 of the Bankruptcy Code and to avoid and recover alleged preferential and fraudulent transfers pursuant to §§ 544, 547, 548, 550 and 551 of the Bankruptcy Code and N.C. Gen. Stat. § 39–23.1 et seq. On October 10, 2012, the defendant filed the motion to dismiss and memorandum of law in support of its motion to dismiss currently before the court. The trustee filed a response in opposition to the defendant's motion to dismiss and a memorandum of law supporting his opposition on January 9, 2013.

## DISCUSSION

Pursuant to Rules 8, 9(b), and 12(b)(6) Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rules 7008, 7012, and 7009 of the Federal Rules of Bankruptcy Procedure, the defendant argues that each of the four causes of action asserted by the trustee fail to state a claim upon which relief may be granted and, therefore, must be dismissed. Additionally, the defendant contends that the trustee's third and forth causes of action, based on a theory of actual fraud, fail to plead with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure.

4

## A.  Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  A party may move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  To demonstrate entitlement to relief and survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (internal citations, quotation marks and brackets omitted).  The veracity of well–pleaded allegations in the complaint will be assumed in determining "whether they plausibly give rise to an entitlement to relief." Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (citation omitted).

## B.  Turnover and Accounting of Property of the Estate

In his first cause of action, the trustee alleges that the grain seized by the defendant from the debtor's granary facility was commingled with grain belonging to the debtor and, therefore, constituted property of the estate.  According to the trustee, because the seized grain constituted

property of the estate, the trustee contends that § 542(a) compels the defendant to turnover the seized grain or account for the value thereof.  On the contrary, the defendant asserts that the trustee's complaint is devoid of any allegation demonstrating that it was in possession of the seized grain during the pendency of the debtor's case, which was commenced on August 20, 2010.

      Section 542 of the Bankruptcy Code "imposes a duty on those holding property of the estate to turnover that property to the trustee." In re Lancaster, No. 10–00359, 2012 WL 3065544, at *1 (Bankr. E.D.N.C. July 27, 2012) (citing 11 U.S.C. § 542(a)).  Subsection (a) of § 542 provides that

> an entity . . . in possession, custody, or control, *during the case*, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (emphasis added); see, e.g., Beaman v. Vandeventer Black, LLP (In re Shearin), 224 F.3d 353, 356 (4th Cir. 2000) ("We construe the language 'during the case' to refer to the entire bankruptcy case, not just the adversary proceeding." (citations omitted)); Hager v. Gibson, 109 F.3d 201, 210 (4th Cir.1997) ("Present possession, either actual or constructive, of the property or its identifiable proceeds, by the person from whom its turnover is sought, is required for recovery under this section." (citations omitted)).  As emphasized by the Fourth Circuit, the entity from which turnover is sought must have possession and control of property of the estate during the pendency of the bankruptcy proceedings and, therefore, must account for the property or the value thereof. Shearin, 224 F.3d at 356 n.7 (recognizing "that the law firm had control of these profits[, which were property of the estate,] during the bankruptcy proceedings because it dispersed bi–monthly draws to the male debtor and adjusted his year–end distribution to reflect those advancements, pursuant

to the partnership agreement.").  See, e.g., Boyer v. Carlton, Fields, Ward, Emanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.), 100 F.3d 53, 55 (7th Cir. 1996) ("The law firm had control of the $125,000 during the bankruptcy proceeding . . . because it exercised control by deducting the attorney's fee that was owed it . . . ."); Redfield v. Peat, Marwick, Mitchell, & Co. (In re Robertson), 105 B.R. 440, 457 (Bankr. N.D. Ill. 1989) (emphasizing that § 542(a) "plainly applies to estate property that was possessed by anyone 'during the case', whether or not they still have it.").

The defendant in this case is not sufficiently alleged to have had possession or control over the grain it seized from the debtor's granary during the bankruptcy proceeding.  Because the grain seized by the defendant was not in its possession during the bankruptcy case, the court need not determine whether the grain seized was property of the debtor's bankruptcy estate pursuant to § 541 of the Bankruptcy Code.  The trustee's complaint does not allege nor state any facts to support the reasonable inference that the defendant was in possession or retained control of the grain it seized from the debtor's granary facility after August 20, 2010, the date of the debtor's bankruptcy filing.  Accordingly, the portion of the defendant's grain seized from the debtor's granary facility between February and April 2010, is not subject to turnover, and the defendant, not having possessed it during the bankruptcy proceedings need not account for the grain nor its value.

### C.  Avoidance and Recovery of Preferential Transfer

Section 547 of the Bankruptcy Code provides that a trustee

may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

7

(4) made

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.  the transfer had not been made.

11 U.S.C. § 547(b); <u>Va. Nat'l Bank v. Woodson (In re Decker)</u>, 329 F.2d 836, 839 (4th Cir. 1964) ("As a general rule, such a payment, in and of itself and without more, will not create a voidable preference since there has been no diminution of the value of the estate.").  The burden of proving the avoidability of a preferential transfer under § 547(b) rests with the trustee. 11 U.S.C. § 547(g).

    As the transaction in question, the removal of grain from the debtor's facilities, occurred more than ninety days before the petition date, the inquiry turns on whether the defendant was an insider. Section 101(31) of the Bankruptcy Code provides a nonexhaustive definition of the term "insider."  Where the debtor is a corporation, an "insider" includes:

    (i) director of the debtor;

    (ii) officer of the debtor;

    (iii) person in control of the debtor;

    (iv) partnership in which the debtor is a general partner;

8

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer or person in control of the debtor.

11 U.S.C. § 101(31)(D); see Smith v. Porter (In re Carr & Porter, LLC), 416 B.R. 239, 254 (Bankr. E.D. Va. 2009) ("Because the statutory language merely 'includes' types of persons deemed to be insiders, courts have found these categories nonexhaustive.").

Nonstatutory insiders are those "who do not fit in the . . . definition of insider but who are nonetheless sufficiently interested parties to fall within section 101(31)." Lynch v. Winslow (In re Winslow), 473 B.R. 94, 103 (E.D.N.C. 2012) (noting that "nonstatutory 'insider status may be based on a professional or business relationship with the debtor . . . where [that] relationship . . . is close enough for the nonstatutory insider to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.'" (citations omitted)).  The examination of whether an entity is a nonstatutory insider "centers on the closeness of the relationship between the debtor and the employed professional [or entity], as well as on whether the challenged transaction was made at arms length." Id. at 101.

With respect to insiders, the Fourth Circuit, in Butler v. David Shaw, Inc., wrote that "an alleged insider must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." 72 F.3d 437, 443 (4th Cir. 1996); Lynch v. Winslow (In re Winslow), 473 B.R. 94, 103 (E.D.N.C. 2012) (emphasizing that in accordance with the legislative history of § 101(31), an insider "is intended to encompass those 'who ha[ve] a sufficiently close relationship with the debtor that [their] conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor." (citing S. Rep. No. 95–989, at 5810 (1978), 1978 U.S.C.C.A.N. 5787, 5810)); In re Heights Ban Corp., 89 B.R. 795, 799 (Bankr. S.D. Iowa

1988) ("Persons not specifically defined [in § 101(31)] but of similar type can be 'insiders.'"). The relevant inquiry is whether the relationship is sufficiently close such that the purported insider has a degree of control over the debtor.

Relying on Three Flint Hill L.P. v. Prudential Insurance Co. (In re Three Flint Hill L.P.), 213 B.R. 292 (D. Md. 1997), the trustee contends that the defendant exercised sufficient control over the debtor due to the close personal and business relationship between Mr. Perry and Mr. Winslow and their families. This close relationship, according to the trustee, enabled the defendant to seize over one million bushels of grain from the debtor's granary facility.

The characterization of the defendant as an insider is not plausible as the debtor had just stolen more than one million bushels of grain from the defendant. To say that the victim of a massive theft is an insider of the thief turns the analysis on its head. The court cannot square this fact with the idea that the defendant had control over the debtor sufficient to confer insider status. Section 547(b)(4)(B) requires that the creditor be an insider at the time of the transfer. The removal of the grain occurred just after the defendant learned of the unauthorized sale of grain by the debtor; at this time, the defendant was not an insider. Although the trustee asserts that the defendant was an insider because no other farmer was allowed to reclaim his grain, there is no assertion that anyone else was similarly defrauded.

Because the court finds, based on the pleadings set forth in the complaint, that it is not plausible that the defendant was an insider, the trustee's claim seeking avoidance of a preferential transfer under § 547, must be dismissed for failure to state a claim upon which relief can be granted.

10

**D. Avoidance and Recovery of Fraudulent Transfers pursuant to §548 and N.C. Gen. Stat.**

**§ 39-23.1**

In order to succeed on a cause of action under the actual fraud theory of § 548, a trustee must demonstrate that there has been a transfer (1) of an interest of the debtor in property; (2) made within two years prior to the bankruptcy filing; and (3) made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  11 U.S.C. § 548(a)(1)(A). Similarly, actual fraud, under North Carolina's Uniform Fraudulent Transfer Act, requires (1) a transfer of the debtor's property; (2) with the intent to "hinder, delay or defraud" a creditor. N.C. Gen. Stat. § 39-23.4.  Due to the fundamental similarities in the two causes of action, the court will address the claims together.

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud must "state with particularity the circumstances constituting fraud." However, malice, intent, knowledge, or other conditions of a person's mind may be alleged generally.  Fed. R. Civ. P. 9(b).  A claim alleging an actual fraudulent transfer under the Bankruptcy Code and under North Carolina's UFTA must meet the heightened pleadings standard of Rule 9(b). Fed. R. Bankr. P. 7009; Angell v. Ber Care, Inc. et al. (In re Caremerica, Inc.), 409 B.R. 737, 755 (Bank. E.D.N.C. 2009).  Because the complaint alleges actual fraud as opposed to constructive fraud, under § 548 and N.C. Gen. Stat. § 39-23.4, the particularity standard of Rule 9(b) applies.

The complaint alleges that the removal of grain from the debtor's granary facility constituted a fraudulent transfer.  The recitation of the facts pleaded by the trustee concerning the fraud are as follows:  The debtor stored roughly two million bushels of grain owned by the defendant at the debtor's granary.  The grain was stored with grain the debtor purchased from other farmers.

11

Unbeknownst to the defendant, and without its consent, the debtor sold a significant amount of the defendant's grain.  Upon learning of the unauthorized sale of its grain, the defendant proceeded to remove over one million bushels of grain from the debtor's storage facilities.  Some of the grain which the defendant removed was commingled grain.  According to the trustee, this removal of grain by the defendant was the fraudulent transfer.  At the time of the transfer, the debtor had actual intent to hinder, delay, or defraud its creditors.

The trustee asserts that the defendant's grain was commingled with grain owned by the debtor.  This raises the question of who owned the grain that was removed by the defendant.  In dealing with the issue of ownership of commingled grain, Nebraskan courts have found, in conversion cases, that a presumption exists that the commingled grain first sold was that which the seller had an absolute right to sell.  Otto Farms, Inc. V. First Nat'l Bank of York, 422 N.W.2d 331, 334 (Neb. 1988) (citing Elander v. Kellogg Grain Co., 119 N.W.2d 522 (Neb. 1963)).

Here, the grain that the defendant removed amounted to about half of the grain that the defendant had stored with the debtor.  The removal of over one million bushels of grain reduced the amount of grain, owned by the defendant, that was stored in the debtor's facilities.  If this court were to follow the Nebraska rule, it would presume that the grain the defendant removed was grain it lawfully had a right to remove.  Additionally, the Nebraska rule would further bolster the conclusion that the removed grain was the defendant's grain, in that the presumption of ownership would apply to the grain that the debtor sold prior.  That is, it would be presumed that the debtor first sold the grain he was authorized to sell, leaving the defendant's grain in the storage facility.  Then, what was left for the defendant to remove, upon discovery of the unauthorized sale, was no longer commingled grain, but simply grain owned by the defendant.

12

A similar analysis is used in the Fourth Circuit when tracing funds of a trust which have been commingled with other funds.  In re Dameron, 155 F.3d 718, 723-24 (4th Cir. 1998).  In cases where the trust property has been commingled, courts use the lowest intermediate balance rule.  Id.

> [This rule] is grounded in the fiction that, when faced with the need to withdraw funds from a commingled account, the trustee withdraws non-trust funds first, thus maintaining as much of the trust's funds as possible.  Hence, pursuant to the lowest intermediate balance rule, if the amount on deposit in the commingled fund has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount.  Conversely, if the commingled fund has been depleted entirely, the trust is considered lost. Finally, *if the commingled fund has been reduced "below the level of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account."*

Id. at 724 (emphasis added). This is also a tracing method which a secured party might use to identify proceeds which have been commingled.  N.C. Gen. Stat. § 25-9-315, cmt. 3.

Without finding that a rule such as the Nebraska rule should apply in this case, and without belaboring the analogy of the commingling of grain with the commingling of trust funds or proceeds, the trustee has not pleaded with particularity that the transfer involved a transfer of the debtor's property.  There are no factual assertions as to how much of the grain that the defendant removed was property of the debtor.  It does not appear that the grain was property of any other farmer; only the debtor's grain and the defendant's grain was commingled.  The facts the court has to consider are that about two million bushels of the defendant's grain was stored at the debtor's facilities and the defendant removed roughly one million bushels, which was commingled with some amount of the debtor's grain.  There are no allegations of how much of the debtor's grain remained in the silos that the defendant "cleaned out."  The trustee has failed to plead this with particularity.

Additionally, the court finds it simply implausible that the defendant's taking back of his grain was a fraudulent act.  The facts alleged show that upon the defendant's discovery of the theft

of grain by the debtor, the defendant removed the rest of its grain from the debtor's facilities.  To suggest that this act was somehow sanctioned by the debtor and amounted to a fraud against the debtor's other creditors is implausible.  The causes of action seeking recovery for fraudulent transfers under §548 and N.C. Gen. Stat § 39-23.4 must be dismissed as they fail to allege fraud with particularity as required by Fed. R. Civ. P. 9(b) and Fed. Bankr. R. 7009 and fail to meet the plausibility standard required for the state of mind of a party committing a fraud.

**CONCLUSION**

Based on the foregoing, the trustee's complaint fails to state claims for relief under §§ 541, 542, 544, 547, 548, 550, 551 and N.C. Gen. Stat. § 39-23.4 with the plausibility and particularity required by Fed. R. Civ. P. 8 and 9(b) and is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  Accordingly, the defendant's motion to dismiss is **ALLOWED**.

**END OF DOCUMENT**